Case number 19-3024, United States of America v. Kelby Gordon appellant, Ms. Baer for the appellant, Ms. Heffernan for the appellee. Ms. Baer, are you unmuted? Is she unmuted, Anne? Yes. Okay. Ms. Baer, you may proceed. Good morning, Your Honors, and may it please the Court, Claudia Baer, Court Appointed Counsel for Appellant Kelby Gordon. I'd like to reserve two minutes for rebuttal. Following Mr. Gordon's conviction for distribution of just under half a gram of fentanyl analog, the District Court imposed a sentence over three times the high end of the guideline's recommended range. In so doing, the District Court committed reversible procedural and substantive error related to its imposition of a consecutive sentence, its treatment of the drug in question, and its review of Mr. Gordon's criminal history. Consequently, we ask that this Court vacate and remand Mr. Gordon's sentence for resentencing. Given this panel's order regarding U.S. v. ABNY, I'd like to turn first to the consecutive sentencing issue. Under this Court's precedent, most recently in ABNY, Defense Counsel in this case did all that it needed to do in order to preserve the claim of error under Rule 51b. It informed the Court of the ruling it wanted, a concurrent sentence, and of the grounds for so doing, invocation of the sentencing factors. Just as in ABNY, this involves a claim of procedural error, but it involves an error that is a requisite of sentencing. Exercise of the District Court's authority to impose a consecutive or concurrent sentence is predicated on the District Court's consideration of the sentencing factors. Just as in ABNY, this is an item that should be on a judge's standard sentencing transcript or checklist. ABNY envisions situations where a more detailed objection or explanation would be required, like in the case of a buried flaw in the sentencing calculation. This is not one of those instances. Consequently, this Court's review is for abuse of discretion, and other circuits have agreed. For example, the Fifth Circuit in Isaguerra-LaSoya said that the same challenge was preserved by the defendant's repeated request for a concurrent sentence. And the District Court, in this case, did abuse its discretion. The District Court did not consider the sentencing factors relative to the consecutive sentence decision, and it didn't indicate why it felt a 10-year sentence on top of a 32-year sentence was appropriate. The discussion of the sentencing... The District Court ran through the 3553A factors. It did. How would that analysis be different on the question of consecutive versus concurrent than it is just more generally on the question of what the appropriate sentence would be? So, the District Court's discussion of the sentencing factors relates to the term of the sentence only, and the statements the District Court makes makes this clear. So, when summarizing his findings in a number of places, the District Court says these findings justify a substantial upward variance. So, that's Appendix 525, 526, and 530. And at the end, the District Court notes that something in the 10-year range is appropriate for Mr. Gordon, and then, again, just summarizes how the factors support that 10-year range. Just like the Seventh Circuit in Jackson, this discussion explains only why the District Court thought that an above-guideline sentence was appropriate. It doesn't explain why the District Court thought a consecutive sentence was appropriate. And other aspects that other courts have found... Ms. Pear, can you hear me? Yes, I can. Can you hear me? Yes, sorry. I see your point about the... I see your point, but as soon as he finished his discussion of the 3553, he went right into the discussion of the consecutive sentences. So, isn't it fairly clear that his discussion of the consecutive sentence was related to his discussion of the 3553 factors? No, and I wouldn't really characterize it as a discussion of the consecutive. At that moment, the District Court is just imposing the consecutive sentencing. There's nothing... Suppose he had just said, for the same reason, I impose consecutive sentences. Suppose he had that phrase in there. Would that have made a difference? Is that what's missing? What's missing in this case is an indication in the record that the District Court considered the sentencing factors relative to the consecutive sentences. Well, that was my question. Suppose he had... Right before he imposed consecutive sentences, he had said, for the same reason, referring back to his discussion of the 3553A factors. So, the Sixth Circuit and, for example, Kitchen and Johnson found that a reference to... Would that have been enough? If the District Court indicated that the sentencing factors also supported the consecutive sentence and that adequately explained the sentence, then it may have been enough. But that did not happen in this case. There was no indication that the same factors justified the consecutive sentence. And factors may cut different ways on the consecutive concurrent decision versus the term. The court also didn't explain why the aggregate sentence, in this case, 42 years, would be appropriate under the sentencing factors. And the District Court also didn't even state its discretion to impose a consecutive or concurrent sentence, which is what the courts did in Kitchen and Johnson Sixth Circuit cases. This lack of an explanation is particularly inadequate when this case involves triple to quadruple guidelines range and the aggregate sentence involved is 42 years. But I'd like to turn now to the more glaring error that the District Court made. The District Court repeatedly justified Mr. Gordon's sentence based on his distribution of fentanyl and his distribution of fentanyl to someone who had requested heroin. But as the government even concedes in its brief, there is no evidence in the record that establishes that Mr. Gordon knew that the substance he was distributing was fentanyl. One of two things happened in this case. Either the District Court imposed the substantial upward variance after assuming that Mr. Gordon knew that he was giving the detective fentanyl, even though there's no supporting evidence, or the District Court imposed the upward variance based solely on the fact that the drug turned out to be fentanyl without regard to whether there was evidence of knowledge under a strict liability type theory. The first of those is procedural error. A District Court may not rely on clearly erroneous facts in sentencing, and both are substantive error. It is unreasonable to find Mr. Gordon significantly more culpable and deserving of a substantial upward variance when there is precisely zero evidence that Mr. Gordon knew that the drug he distributed was actually fentanyl. Either way, this fact that Mr. Gordon ended up distributing fentanyl became a prominent feature of the District Court's sentencing analysis. It is the first factor that is mentioned. It is mentioned repeatedly throughout the sentencing transcript, and its influence isn't limited to the nature and circumstances of the offense. It also influences the District Court's analysis of criminal history and unwarranted sentencing disparities. So, on 528, for example, the District Court notes that Mr. Gordon is part of this trend of hardened drug dealers who start as street-level dealers of marijuana, but then progress to selling one of the most dangerous drugs on the street, fentanyl. And with reference to the unwarranted sentencing disparities, the District Court says that an aggravating circumstance for Mr. Gordon is that he was the only one who distributed fentanyl. This is also another clearly erroneous fact, because Mr. Gordon was not the only one who was distributing fentanyl, and the detective's testimony established that Mr. Anderson is the one who handed Mr. Gordon the package that he handed to the detective. That is substantively unreasonable, as well as certified Sixth Circuit's decisions in Flynn, Hubbard, and Rawson. In all three of the cases, the variance imposed was smaller than the one here, both in terms of absolute numbers and in terms of percentages, and also the guidelines treatment under 2D1.1. I realize that I'm in my rebuttal time, but if I could quickly touch on the third error we've identified, which is that the District Court repeatedly, when analyzing Mr. Gordon's criminal history, repeatedly justified the variance with reference to what could have been if he had qualified as a career offender, were it not for this court's decision in Winstead. This is an enhancement that Mr. Gordon is not legally eligible for, and repeated references to what could have been to justify what was actually imposed or to explain why a dramatic variance actually isn't that dramatic is unreasonable. There were a substantial number of convictions and incidents that produced zero criminal history points. Why isn't it fair for the District Court to say that's a legitimate consideration, and the fact that the guidelines might zero out one or two doesn't compel me to ignore the fact that there are nine? Because the District Court didn't just do that. It repeatedly referenced this parallel universe pre-Winstead or no-Winstead where Mr. Gordon qualifies for the enhancement and gets a guidelines range of 210 to 262. And these repeated references, and beginning the analysis with this reference, it changes the framework. So, anything below 210 suddenly seems much more reasonable, but that's not the framework. The framework in this case is the guidelines range, which was 30 to 37, and 120 months is a dramatic leap above that. And this, what Mr. Gordon could have been eligible for, shouldn't have been part of this analysis at all. Thank you. Thank you. We'll hear from the Governor. Yeah. May it please the Court, Patricia Heffernan on behalf of the United States. Picking up with the third issue, the Winston issue, it's entirely proper for the District Court to have considered these old, unscored convictions. There's nothing improper about that. And as the Court recognized, not only were these simply old convictions, these were convictions of the same or similar type of conviction. And the Court has recognized in Molina that where you have same or similar convictions, it makes it much more likely that the defendant is going to be a recidivist with respect to that crime. And if this case doesn't prove the rule, I don't know what does. With the nonstop, basically whenever the defendant is on the street, he's on Bernie Place in that particular block selling drugs and out with weapons. And the District Court quite properly recognized, based on his history, that he was a menace and that nothing short of a significant sentence, significantly longer than the guideline range called for, was necessary to protect the public from Mr. Gordon. And regardless of the reference to Winstead, the Court was simply pointing out that but for these guilty pleas, he would have been subject to Winstead. But this is a sentence that is half of what would have been imposed under Winstead had Winstead not come into play. And so it's just not accurate to say that this is a Winstead violation. With respect to the District Court's reference to the fentanyl in this case, this is obviously a fentanyl case. That's what the defendant sold. But the District Court made it quite clear that there were two independent bases for the variance that imposed here. One, the defendant's extreme criminal history and the need to protect the public. And the second independent basis it found was the unwarranted sentencing disparities in the case. And then it remarked that if you consider those two independent bases together, coupled with the fentanyl, the variance was more than justified. So the references to fentanyl did not play into the 10-year, did not impact the decision to impose the variance to 10 years, excuse me, in this case. With respect to, I guess I'll, if there are no questions on those two points, I'll just move briefly on to the consecutive nature of the sentence here. This is not a, and with respect to the court's request that we address Abney, this is not the type of error that's alleged here that's of the type that Abney considered the District Court's refusal to let the defendant allocate before imposing sentence. And as the court pointed out in Piles, the Supreme Court in Rita rejected the notion that it's error for a District Court to fail to articulate on the record all of its consideration of the 3553 factors. And in this case, the District Court gave a very thorough, detailed consideration of the 3553 factors. And I think when you read this transcript, there is no doubt that those factors applied both in terms of the length of the variance and the consecutive nature of the sentence that imposed. The District Court said, with respect to the argument that the defendant advanced, which was, hey, I've got 32 years in this murder case, so you're really, there's no point in giving me consecutive time here, the District Court responded to that by saying, I'm sentencing you for your conduct here in this case. And if there's nothing that comes across from that transcript clear, it's that the District Court believed that based on the defendant's individual defendant-specific factors, 10 years was an appropriate sentence in this case, regardless of what was going to happen in the murder case. And finally, with respect to the invocation of Jackson, Jackson was a very different case. Here, the argument was, don't give me any, give me concurrent time because of my murder sentence. The District Court addressed that argument and said, no, I'm sentencing you for your conduct in this case. So this is not a Jackson type case. If there are no questions, we ask that the judgment be affirmed. Judge Katsas, Judge Edwards, any questions? No. Great. OK, well, thank you. Thank you. Thank you. Ms. Pierre, I think you were out of time, but you can take one minute, if you'd like. Thank you, Your Honor. I'd like to address two points. First, on the Abney error, this is the type of procedural error that Abney talks about. It's an overarching duty. That's a requisite of sentencing. It should be in a sentencing transcript or script. Additionally, the reference to the 32 years in this case, it doesn't explain why a consecutive sentence is appropriate. For example, District Court says that the defendant should get a bonus for committing more significant criminal behavior. This is just like the line in Ross and in Jackson that the Sixth and Seventh Circuits found inadequate. In Ross, it was a credit for bad behavior. In Jackson, it was a bonus. The second is to suggest there are two independent bases for the District Court's decision ignores the prominence of the fentanyl analysis throughout the District Court's decision. It also acts as if the factors are totally isolated from one another, and they are not. I see I am out of time. Thank you. Right. So, Mr. and Ms. Heffernan, thank you very much. We will take the case under submission.
judges: Tatel, Katsas, Edwards